May it please the Court, as I said, John Capel from the Justice Department for the Defendants' Appealants, Secretary of Labor and the Department of Labor and various officials in the Oregon Restaurant and Lodging Association case. This case directly affects the livelihood of tens of thousands of tipped employees in the Ninth Circuit and elsewhere in the United States. In 2011, the Secretary, then Secretary Solis, exercising her broad regulatory authority to fill in gaps in the statute and eliminate a loophole that would have provided a perverse disincentive to employers with respect to using the statutory tip credit, promulgated the tip pooling regulations. What gap was it filling? The gap that it was filling is that the section 3M expressly only addresses the statutory tip credit and is silent with respect to tips outside of the statutory tip credit. What makes that a gap? Seems to me that 203M deals with the tip credit, but that doesn't say anything that it causes a gap otherwise. Well, Your Honor, it is silent with respect to the tip credit outside of the statutory tip credit. It really doesn't have anything to do with the tip credit outside because 203M was the way to get a tip credit so that you could meet the minimum wage requirement. And so meeting that minimum wage requirement, which it does in this case and which it did in Woody Woo, 203M didn't apply at all. And in fact, in Woody Woo, the government admitted on a similar argument that 203M did not apply and that it was of no assistance and so it went to 206. Well, Your Honor, I guess I'm trying to figure out what you're trying to fill. Your Honor, we're trying to fill a gap in 203M. Well, the government has already argued to me once before that 203M is of no assistance in any gap. And so I'm trying to figure out why it all of a sudden became a gap. Your Honor, the government's position in Woody Woo is that 203M of its own force essentially mandated employee ownership of tips. And this court rejected that argument in that context. But holding that the. Well, just a minute. That's not exactly what I asked you. The government filed a reply brief in Comey. And in the reply brief, in an oral argument, it said, we recognize 203M is of no assistance to this gap filling that we're trying to do. And therefore, we're going to 206. And so therefore, we looked at 206. Now, why is the government going back? I'm having a tough time understanding where the gap needs to be filled. Well, Your Honor, in the regulations, in the preamble to the regulations, which were before the court in this case, the government was specifically relying on 203M for the gap rather than 206. Well, I understand that. But if, in fact, 203M doesn't leave a gap, then whether the preamble to the regulations says it does or not, the government's got to demonstrate to me there's a gap to be filled. Well, Your Honor, again, I would respectfully emphasize that. I mean, if you're going to say general authority, how do you distinguish Chamber of Commerce versus the NLRB? In that case, the NLRB wanted to enact a rule, and the Fourth Circuit said there's no support for enacting a rule where there's no gap. There's no support for enacting a rule where there's nothing to be put. We let Congress make the law, not the Department of Labor, and that's what Woody Woo is about. Woody Woo was all about whether there was a gap. And we looked at 203M, and we said there wasn't any gap. And the government agreed with us and said, well, look at 206. And so we looked at 206, and we said there's no gap there either, so you can't do anything. And I'm wondering why this is any different. Your Honor, it's totally different because here, and the key point is that the Secretary exercised the broad regulatory authority that she has under Section 29B of the Fair Labor Standards Act. And Woody Woo, excuse me. I mean, I'm just trying to say broad regulatory authority really doesn't say anything to me because I've got to find something either an express idea that the government should promulgate some regulations in this particular area, or I've got to find some implication in the statute to say the government ought to put some regulations together. Couldn't find them. Couldn't find them in CUMBE either. So tell me where I find it. It isn't in general authority because general authority doesn't say you can do anything you want in the Labor Code. No, but in 29B, Congress specifically authorized the Secretary to issue regulations that she deemed necessary to the implementation of the 1974 amendments, including the amendments to Section 3M. But it's got to be something that the amendments suggest they do. Like we said in CUMBE, a statute that provides a person must do X in order to achieve Y, does not mandate that a person must do X, period. And that's what this is about. Your Honor, again, I would respectfully disagree. In CUMBE, the court was really holding that the statute of its own force did not mandate employee ownership of tips. But it doesn't follow from that that it does mandate employer ownership of tips, which is what the existing court and the plaintiffs contend. But I guess that's the question. Even if I agree with you, what law do you go to that suggests that the employer doesn't? If I go back to what we looked at CUMBE, Williams v. Jacksonville, it says in businesses where tipping is customary, the tips, in the absence of an explicit contrary understanding, belong to the recipient. Where, however, such an arrangement is made in the absence of statutory interference, no reason is perceived for its invalidity. So I looked for the statute, and I couldn't find it. Your Honor, again, in our view, the statute is 3M and the secretary's regulatory authority under 29B of the 1974 amendments. That's the way the system works. Is that what you're telling us? That's correct, Your Honor. Why don't you say that? I thought that I was saying that, Your Honor. But that is a, and CUMBE was not a Chevron step one holding. It was in a completely different context. As the court, I will quote briefly the language that the court used at the beginning of the CUMBE decision. It identified the question as whether a restaurant violates the Fair Labor Standards Act when despite paying a cash wage greater than the minimum wage, it requires its wait staff to participate in a tip pool that redistributes some of their tips to the kitchen staff. That's entirely different from the question before the court on this case, which is whether the secretary has validly exercised her regulatory authority under Section 29B to implement the 1974 amendments to the Fair Labor Standards Act. And the secretary follows a rather rigid procedure, right? That's correct, Your Honor. What is that? The procedure is notice and comment rulemaking, which is what the secretary did here. And who authorizes that? Excuse me? Where's the authority for that? The authority is in the APA generally, the notice and comment rulemaking provisions of the APA. And specifically, they kick in because of Section 29B of the 1974 amendments to the FLSA. Counsel, I want to get your understanding of the following scenario. Assume a business where all of the employees, I'll use win to make it easy, so all of the employees, both the car dealers as well as the people washing stuff in the back, everyone is paid above minimum wage or at minimum wage or above before any tips. So everyone's paid at or above minimum wage before any tips have been collected. What's the department's position in that case? In that case, may win do what it's doing here? Well, Your Honor, no, the department's position is that under the regulations, certainly the employer can't exercise dominion over all of the employee's tips, which is what their position boils down to, the employer's position. Even if everyone is paid minimum wage or above, separate from tips, they still couldn't do that? Well, yes, Your Honor, that's the purpose of this regulation, that it prohibits that, and the reason is that that allows the – effectively allowing employers to do as they see fit with tips, including to subsidize their payment of the minimum wage to the employees whose tip is taken and to all other employees. That's why I want to make sure you understand my question. Assume all of the employees receive a minimum wage or above before tips are even collected. So there is no subsidizing of minimum wage with the tips. Everyone's getting paid $10 an hour, and then we start counting tips. In that scenario, where the tips are in excess of the minimum wage for everybody, there is no subsidizing someone's to get up to minimum wage. What's the department's position in that scenario? Your Honor, in that scenario, it is still forbidden because in the department's view, that is still subsidizing the minimum wage payment because it goes into the employer's till, and the employer then can use it as it sees fit to pay its employees and to do whatever else it chooses with it. And that is – I guess – I can understand the Department of Labor's concern if Wynne was using the tips to pay the guys washing dishes to get them up to minimum wage. I see the logic there. But if Wynne is already paying everyone at minimum wage or more before tips are even collected, then I have a harder time understanding why that would be a concern to the Secretary. Well, Your Honor, it's because the purpose of the regulation is to establish that consistent with section – with the 1974 amendments, that tips do belong to the employee unless the employer is taking the statutory tip credit. I see what you're saying. Okay. Let me ask you another hypothetical since my colleague has gone into hypothetical. Supposing a business has a jar on the front counter that says, Donations support your local workers. And the employer uses the money that customers put in that jar to pay his minimum wage obligations at another store that doesn't employ the local workers. Does the department have the authority to issue a rule that says the employers can't pay their minimum wage obligations out of that jar? Yes, Your Honor. We believe that the department certainly has. It isn't a tip. But, Your Honor, it is part of the whole – of the entire universe of the relations – the pay relations between the employer and the employee. And that is embraced by the Fair Labor Standards Act, by section 3M specifically. As I say, if 3M is your only place, then I'm having a tough time with you. I was trying to find out where else I could go to get this authority. Because 3M, in my book, deals with tips and tip credits. And if one has the minimum wage, as they do here, if one has the minimum wage as they did in Cumbee, and they distribute tips after that to whoever they distribute it to, then I don't know how 3M applies. So I took it out of the tip category. And I just put it in a contribution in a jar. And I said, what if it's a contribution in a jar that has nothing to do with tips? Then where is the authority of the Department of Labor to say what happens there? Your Honor, in that scenario, I believe that the department would say that that is the effective equivalent of a tip. That really is a tip, even if it's not labeled as such by the employer. Well, the department is not there to see to it that employees just get the minimum wage. They want a better living for people. They don't want people living on a minimum wage. Well, that is correct. And indeed in the... That is the goal of this legislation, isn't it? Yes, Your Honor. And it's certainly the goal of Section 3M. And Congress even said in the legislative history, which is quoted, which is found in the appendix, that there's a serious legal question as to whether a tip credit should be allowed at all. I believe that's page 26 of the excerpts of record. But what Congress specified then was that it should only be allowed to the extent that the employer was taking the statutory tip credit. I would like to now turn over, if there are no further questions, Mr. Buck. May it please the Court, Joshua Buck on behalf of plaintiff's appellate, Joseph Cesar. And I'd like to respond to Justice Owen's question, because I think it specifically addressed some of the facts that we have in the Wing case, which I think do illustrate this loophole that has been discussed by Mr. Capel. And in the Wing case, employees, dealers, were paid the minimum wage under Nevada law, which is $7.25. Nevada law has a two-tier minimum wage, but it's the same as the federal minimum wage. That minimum wage, in addition, they earned tips, and those tips were distributed widely to management employees as well, supervisors who were, in fact, paid salary in addition. They got a cut of these tips. And in essence, this was not a minimal amount of money, the tips that these folks earned is fairly significant, and the take, essentially, that was taken out of these employees' tips and given to management was a large amount of money, large enough so that in the net effect was that Wing was taking 100% tip credit. So in essence, it was taking the tips that would cover a whole year's minimum wage for this particular employee. So in our view, the way we look at the transaction where the money is going in this particular scenario is as if Mr. Wing himself took the tips and then deposited them in the payroll department, and then at the end of the two-week pay period time, those tips were then used to pay the minimum wage. But in that situation, as I understand it, if they took any tips, it was pursuant to a negotiated deal, and it was after the minimum wage of those whose tips were taken had already been paid, without any credit for the tip credit, right? There was no tip credit taken in this particular case under 3M. A minimum wage was paid outside of any taking of the tip credit, and all they did was they negotiated a deal that they would then take tips after the minimum wage was paid and paid to someone else. I'd like to respond in two parts. I mean, is that true? I dispute that assertion that the minimum wages were paid above and beyond the tips because the way in which it was actually conducted was, first of all, it was not necessarily a voluntary agreement. First of all, I don't want to say it's above and beyond. All I want to say is they had already received their minimum wage. Any tips taken was from money they got above and beyond the minimum wage they had already received. And again, I would dispute that factual assertion, precisely because tips are taken on a daily basis. An employee is not paid for two weeks following the two-week pay period. Those tips are then distributed and given away. It's just as conceivable to say that the tips that were taken from the employee were then repaid to the employee at the end of the day. Now, on the itemized pay stub, did it say pay for minimum wage? Yes, admittedly it did. But the itemized pay stub also had tips as well. It's conceivable, and frankly the way we view the case, Your Honor, is that the tips that were taken from the employee deposited at the payroll department were then refunneled and given back to the employee. And again, under this particular scenario, it is the net effect of the employer taking a 100% tip credit. And frankly, it goes to show the nullity of 3M. What employer, realistically, at this point in time, would ever want to take the 3M tip credit? Because at that point in time, under woody woo, the employer could just simply pay the minimum wage, $7.25, and take all the tips. I would like to reserve time for rebuttal from my co-counsel. Thank you. May it please the Court, Paul DeCamp for the Oregon Restaurant and Lodging Association and the other plaintiffs in the declaratory relief action. The Fair Labor Standards Act governs minimum wage, overtime, child labor. It is not a statute about tips. For nearly all employers in our economy, the obligation that an employer has to pay minimum wage is to provide cash or other equivalents at or above $7.25 an hour. The Act does not look to where the employer gets the source of that revenue. It doesn't look to where the money came from. If the employer pays the wages, the employer has satisfied the minimum wage obligation. There is a narrow exception for certain employers. If they're not going to use the general method of paying the minimum wage, i.e. paying wages, then there's this exception. They can take a credit for money that the employees have received in another way, not from the employer, but in the form of tips. That's what Section 3M is about. It's important to understand that backdrop, as well as the backdrop that the Supreme Court has addressed this in Williams v. Jacksonville Terminal in 1942, when the Supreme Court said that tips are not going to be the property of the employee if there is an express understanding between the employee and the employer. In 1942, that was a different world. I would be happy then in 1942 if I got paid $0.25 an hour as a kid. It's a different world in 1942. You're telling me that the whole purpose of the Wage and Hour Act and all that legislation was just to say to it that people got the minimum wage and everything else that came in belonged to the employer. That's the employer's sole obligation, minimum wage. Minimum wage and overtime. You don't think that when someone goes to work in a restaurant or a waiter's, which is hard work, you think that they're—and most of them don't have a lot of power. Again, marketing power. A lot of them are single women starting out. Maybe they're going to college. Maybe they've got kids at home. So they have to limit their scope of being able to earn a fair minimum wage. Your Honor, there's nothing wrong with wanting workers to receive— There's nothing wrong with them not being able to feed their kids either. Your Honor, the Fair Labor Standards Act does not require employers to pay more than what is required by the Act. That specifically is minimum wage and overtime. It is great that workers receive more. Workers want more. Employers want employees to have more. But what the statute requires is compliance with the minimum wage. This Court in Woody Woo— Your Honor, that's incorrect. And that is that this Court reached the exact opposite conclusion in Woody Woo. This Court adverted and cited to the Williams against Jacksonville Terminal, said that was still good law, and said that was the starting point for— I know that's Woody Woo. But Woody Woo is being challenged here today. You know that, don't you? Certainly. And this Court does not have the authority to overrule a prior panel decision. This is binding stare decisis, Your Honor. Your Honor, a prior panel decision can be superseded by—through the administrative process of rulemaking. And that's what we have here. Your Honor, that's what Brand X is all about. And what Brand X says is that when a statute has been construed definitively by a court where the court has said that the plain language of the statute dictates a result, then even a subsequent regulation, which is the scenario envisioned in Brand X, and that's what we have here, a subsequent regulation that purports to countermand the plain language construction that the court has already given to the statute is of no effect. The Department cannot say the Ninth Circuit got its plain meaning interpretation of Section 3M wrong. Then that's exactly what they've done in this rulemaking under Brand X. Woody Woo governs that regulation is invalid. Let me ask you. Mr. Buck, I think, raises a good point, is that if you're right, why would any employer agree to go and then take the formal tip credit? Well, there are a few answers to that. The first is, empirically, when you look at states that do allow tip credit, which is most states in the country, although not most states in this circuit, employers take the tip credit empirically. Where the tip credit's available, employers find it advantageous to do that. Is that in the record? It's not in the record. Okay, so in terms of, I appreciate your perspective. I know you have a lot of history in the field, but something that we can actually look at here, what, because the empirical stuff's not in the record, so something more than that. Why would an employer do it? Well, I think the biggest reason is an economic reason. Aside from the practical reasons, we'll start with the economic reason. Under the Fair Labor Standards Act, if the employer takes the tips, and rather than taking a tip credit, pays everything in the form of wages, then every penny of those wages, whether above or below the minimum wage, goes into the employee's regular rate. And that means that when the employee gets into an overtime situation, the employer has to pay a premium of one-half of that regular rate for every hour worked above 40 hours in the week. So in a situation where the employee has received $20 an hour, whether it's tips that the employer has taken or it's just cash wages that the employer has paid, then that employee gets a $10 an hour premium for every overtime hour. On the other hand, if the employer has taken the tip credit and said, employee, you keep your tips, we're going to pay $2.13 an hour or whatever lesser wage, then the employer's obligation to pay overtime is limited to an extra $3.62 an hour for the overtime because the employee's regular rate is deemed to be minimum wage, $7.25 an hour. It's a huge economic benefit for the employer to not have to pay a very high premium in the overtime hours. Then there's the practical issue. If an employer is going to take the employee's tips and use them for some other purpose, they're going to have a hard time getting employees. Employees who work in tipped professions want their tips. And you disincentivize good service, you disincentivize all the things that tips are supposed to drive. If you take the tips away. And again, this court addressed that issue in Woody Woo, where it said that an employer might take tips, and that might be unfortunate for the workers. The workers certainly want more, but that doesn't make it contrary to the FLSA. But would it be your position, though, that in... Again, I'm using win because I've been in a win property, so it's easier for me to picture it. It's your position that for win, Mr. Win could take the tips from the dealers, as long as he's not taking the tip credit. Mr. Win could take the tips, and as long as they're getting paid minimum wage, the dealers, he could really do anything he wanted with those. Under federal law, yes. Under federal law, yes. There are some states that would say you cannot do that. Sure. But under federal law, the employee in that situation is in exactly the same situation as every other employee in every other industry, as long as the employee is receiving at least minimum wage. Section 6A of the Fair Labor Standards Act has been satisfied. Now, if Mr. Win were to do that, he might have a problem having employees, employer relations issues and whatnot, but it is lawful. But I also want to be clear, if this were the only change that the regulations were, if these regulations only said employers shall not keep the tips, none of the plaintiffs, not a single one of the six plaintiffs who brought the declaratory relief action would have brought the case. We wouldn't be having this discussion today. That's not the part of the regulations that's objectionable. It does violate the statute. It is invalid. But what is the bigger problem is that the regulations sweep much more broadly than that. The regulations that we have challenged constitute five sentences. Only a single sentence goes to the issue of the employer keeping the tips, Mr. Win in this example. The four other sentences have nothing to do with that. They preclude the exact kind of tip pool as was evident in Woody Woo, where it was back-of-the-house employees, not the employer keeping the tips, but having kitchen staff and other non-tipped employees sharing in the benefit of the tip pool. That is why we brought this case. And if we look at just normal principles of statutory construction, the regulations that the department has issued here render 13 words in the Fair Labor Standards Act, surplusage, meaningless. And that's important. The specific words would be the language, and all tips received by such employee have been retained by the employee. That entire clause of the statute has no meaning. The department's regulation is valid. And that's a very important limitation on the department's authority. When we talk about Williams v. Jacksonville Terminal, the employer has the ability to contract with the employees regarding who will own the tips, absent a statutory interference. Here we don't have a statutory interference. Nothing in the Fair Labor Standards Act prevents the employer from doing this. And, in fact, the department's regulations are a regulatory interference with the statute because they nullify the plain language of the statute. This court construed the plain language in Woody Woo. Under Brandex, that is stare decisis, that is governing. It trumps any contrary regulations by the department. There is no gap to fill. And I want to make sure that Mr. Scalia has his time. Well, I want to ask you one. Maybe Mr. Scalia can answer it. It seemed to me that the only answer the government had today was it's in the secretary's general authority. How do you answer that? Because if we're not going under 203M now, we're looking about now the answer is general authority. The secretary does not have general authority to issue regulations that are untethered. That's the substantive provisions in the Fair Labor Standards Act. The Supreme Court said that in Christensen against Harris County. The Sixth Circuit said it in Kilgore against Outback cited in Woody Woo. This is very clear, and it's well established. If they can't tether the regulation to a specific provision in the statute, it is invalid, and I'll turn over the podium here. Good morning. May it please the Court. I'm Eugene Scalia representing the defendants in the Wynne case. I have two essential points. First, that Wynne is ‑‑ I'm sorry. First, that the Woody Woo decision is binding on this panel. Second, it's correct. In terms of Woody Woo binding on this panel, contrary to what Mr. Capel said on behalf of the government, the case that's before you versus Wynne is indeed the same case as Woody Woo. The allegation is the same. You heard Mr. Buck, for the plaintiffs, acknowledge that Wynne does pay the minimum wage. In addition, employees receive tips, some of which they share. That was exactly the set of allegations in Woody Woo itself. Judge Owens, you asked about some hypotheticals. Well, what you heard from Mr. Buck is that's not this case. And so, therefore, under Brand X and basic principles of stare decisis in administrative law, this panel is simply bound by Woody Woo. And, in fact, I think one's hard-pressed to find a clearer case where Brand X indicates that the prior panel decision holds. The Labor Department itself, in adopting the rule that it did, said that Woody Woo was a, quote, plain meaning case, quote. It certainly was. It rested on the clear language of the statute at four different points. And if you look at footnote six of Woody Woo, it's actually fairly remarkable. And, again, nothing like it in Brand X, nothing like it in home concrete supply, which is another Brand X type case, and nothing like it in the precedence cited in Brand X for the Brand X rule. What this court did in footnote six of Woody Woo said, this statute is so clear that we don't need to hear the Labor Department's view on it. We don't need their assistance. So, unlike most Brand X cases, the Labor Department actually did appear before the court, present its views, and the court said, not so much you're wrong as we don't defer to you here. And, finally, in that footnote, Woody Woo cited a decision by this court, Metro Leasing. Metro Leasing is a Chevron case. And so the point in citing it was that Chevron step one, there is no room for deference. What the government is coming and telling you now is not merely that this court's so-called plain meaning decision was wrong, but that this court committed a trifecta of errors. That is the government's position. They are asking this panel to say that in Woody Woo, this court misunderstood the plain language of the statute, misunderstood the Williams-Jacksonville Terminal case, and they are saying, please rule that a prior panel of this court also misunderstood the Christensen case. With all respect, that's not within the power of this panel. If I could turn to Christensen for a moment, because that was important to the decision in Woody Woo, and it's central again here. We've heard about gaps. We've heard about silence. That was an argument the Labor Department made and lost in Christensen, where they took the position that because the Fair Labor Standards Act did not expressly permit employers to do something, they, the Labor Department, could come in and supposedly fill that gap by prohibiting it. And what the Supreme Court said was, quote, that's exactly backwards, end quote. And Woody Woo quoted that language with emphasis. And so we're hearing the same argument again. Suppose silence. Silence relevant for Chevron is a circumstance, for example, the government relies upon the city of Arlington. What you had in the city of Arlington was the phrase, something has to happen within a reasonable time. It was silent about what within a reasonable time is. And the FCC said, well, it's 90 days. That's an area where there's some silence, there's some room for an agency. But for a federal agency to step in and purport to establish an entire new right of action is extraordinary. It's barred by Alexander v. Sandoval and basic principles of the relationship between Congress and the agencies. And it's also wholly inconsistent with the structure of the Fair Labor Standards Act. Judge Smith, I suppose part of the reason for the Labor Department's half-hearted effort in Woody Woo to fall back on 206 is it was struggling to find some provision of the act that would actually enable somebody to sue for tips. But it's not there. As we point out, including in our 20HA letter, there are state laws that enable employees to sue for recovery of their tips. But the Fair Labor Standards Act is a narrow law that addresses only a limited number of things. Tips appear in that act only in the narrow context of addressing wages and is a narrow exception. There's no other right to tips under the act. It's just not within the scope of what the act is addressing. And if you look at the enforcement provision at 216B, what it lets you do is seek to recover wages but not tips. There's simply no basis for such a cause of action. When I ask you, Counsel, about Christensen, what do we make of the concurrence by Justice Souter in that case where he says, I join with the understanding that this decision does not preclude the Labor Department from promulgating regulations? It was a very short and uncertain concurrence. I don't think it was necessary to the votes and the opinion. But I think that there already was, of course, a Labor Department regulation there. That was what was being addressed. So I don't know what Labor Department regulation in that circumstance might have been permissible for them to achieve what they were attempting to do. But, Judge Owens, if I could actually turn to the Labor Department rulemaking here, because you did ask about the record, and you've asked some important questions about possible abuses. First, to be clear, as you noted, and as was conceded by plaintiff's counsel, the win is paying the minimum wage. This is not a circumstance where money is being taken from employees into the general treasury and then paid out as the minimum wage. On page 3 of their reply brief, the plaintiffs concede that the tips are not being taken into the general treasury. They're being set aside. And, in fact, but if I could turn to the rulemaking record, the Labor Department paints this concern that employers are going to snatch all the tips, pay them back in wages. They don't cite a single instance of that actually occurring. So the justification for this extraordinarily broad rule, which purports to create a new right of action, is a figment of the Labor Department rulemaker's imaginations. But there's no evidence in the rulemaking record adopted by the agency that employers actually are doing this. I think that's. But it went through notice and comment, correct? It went through notice and comment. So that would have been the time to say, look, the regs say what they say. I don't think now we can say, well, they really shouldn't have gone through notice and comment because it was based on a fallacy. We're kind of stuck with the regs as they are, aren't we? Well, we're stuck with the regs as they are. And my point is that the Labor Department justifies this extraordinarily broad regulation on a supposed abuse that it doesn't even identify as having occurred in the regulation. So I think that should give the court comfort that this supposed abuse will not, in fact, occur for the reasons that Mr. DeCant has identified. The other point that I want to make, the reason that the Labor Department wasn't able to say, we found this, that, and the other circumstance where this problem occurred. The other point I'd like to make is that employers want employees to have tips because that incentivizes performance. And so that would be another reason an employer wouldn't simply strip all the tips away and then say you're on a straight wage. You'd lose the benefit the employer does get from the tip. A final note I want to make with regard to the Winn case in the, this issue's been litigated, not merely previously in the federal court, but also a 2013 Nevada Supreme Court decision which itself makes clear that Winn is not taking the tips. The statements about managers taking the tips are not alleged in the complaint. And the labor commissioner held that the people that were sharing in the tips did not have higher fire authority. But Nevada has a statute that prohibits taking employees' tips for the employer. In the ruling in the Winn-Baldonado case where two of the plaintiffs here were plaintiffs there as well, the ruling was that Winn was not taking the tips for itself. It was only pulling them on employees. In short, as I stated at the outset, this Court is bound by Woody Woo, but Woody Woo was correct. And in no event does this abuse, supposed abuse of 3M that's been conjured by the Labor Department in its rulemaking, justify a rule of the exceptional breadth that they adopted. It certainly does not justify reversal of the Justice Court's decision on the facts alleged in the Winn case. If there are no further questions. What percentage of tips do we know actually get back to the plaintiffs in the Winn case? I don't have the exact percent, Judge Pragerson. What I will say is this particular group of plaintiffs are a bad poster child for the claim that if the Labor Department is wrong, that people will be subjected to substandard working conditions because they make $75,000 a year or more. And yet their allegation, their complaint is they effectively receive no wage at all. So these are handsomely compensated employees. The other point I would make, Judge Pragerson, is if you look at Woody Woo, part of what that tip pool was doing was sharing wages with dishwashers. People who don't interact with the public, they're hidden in the back, but this pooling enabled them to receive more. Likewise, in the Oregon case, you've got, I think, cooks in the kitchen don't interact with the public. The tip pool is a way for them to make more. So tip pooling actually can be a way. Well, we actually don't know that's necessarily true. The source from which it is coming, we know, is the tips themselves. And so they have the advantage of that, and the tip pool can often function as a way of helping people who are not among the more compensated people within the workplace, which is what was going on in Woody Woo. So there's a source to compensate the dishwashers. The employer might pay from its coffers, but it might not. We don't know. What we do know is that in circumstances like that and in other tip pools, you have people who are less compensated in the back of the house who are earning more as a result of tip pooling practices. Just to sum up, what the Labor Department can't do is the following. The statute has a tip credit provision. They have turned it into a tip ownership provision. The statute says you get a tip credit subject to conditions. The Labor Department has determined actually what that provision stands for is you own the tips, subject to an exception. It's turning it entirely on its head. The Labor Department has conjured problems at the margins that are unsubstantiated by the preamble to its final rule. And again, the WIN facts, as we've heard from plaintiff's counsel, are different in kind. I'm sorry, your question was whether there were hearings? Questions were aired during the hearings. In the Labor Department rulemaking or the hearings in the WIN case that went to the Supreme Court? During the hearings. I confess I have not reviewed the full rulemaking record for the Labor Department, Your Honor. They wouldn't have had hearings probably for a wage hour rule. They would have taken notice and commented at the Labor Department. But I would think that if the Labor Department had evidence of this supposed practice of taking all the tips in and sending them back out as wages, that it would have actually cited that evidence. It failed to do so, so it doesn't justify a rule even that narrow. But again, the rule they adopted was vastly broader. Thank you. To address a few points. Thank you very much, Your Honor. Thank you, I appreciate that, Your Honor. With respect to your point about the notice and comment rulemaking process, I would note, and it's on page 7 of our brief, the Chamber of Commerce itself approved of these proposed rules. You know, that's also in the excerpts of record, page 163. So that suggests that there was not this uniformity among the employer organizations that Mr. Spillio seems to be suggesting that there is. But apart from that, this is simply not a Brandeis case. Woody Woo did not answer the question that's before the Court here. Woody Woo held that the statute itself, of its own force, does not mandate employee ownership of tips. But it did not hold that the statute mandates employer ownership of tips, which is the effect of the upshot of what the other side is arguing here. Would you make a footnote 6 in Woody Woo? Footnote 6, I believe that that simply said that deference wasn't at issue here. There was no need to get into deference. The language that they quote, which I think is a problem for your side. I'm not saying it's game ending, but it's something you've got to deal with. It says, at any rate, because we conclude that the meaning of the Fair Labor Standards Act's tip credit provision is clear, we need not decide whether these regulations are still valid. Now, I understand these are different regulations than the ones now, but it's saying it's so clear we don't need to look to regulations. Yes, Your Honor. In that context, it was saying it was so clear that the statute clearly and unambiguously did not mandate that employees own their tips. But that was all that it was holding. And it didn't follow. It's not a corollary from that that the converse is true, that employers own the tips and have free dominion over them, which is what the other side is arguing here. So you're saying it was very clear, when they said it was very clear, it was intended to mean it's very clear that there is no clear, it's very clear there's a gap is what you're saying. Yes, Your Honor. That's correct. And the statutory authority here comes from 3M itself. From 3M and from 29B of the 1974 amendments. That is the basis for the Secretary's action regarding tips. And this Court held in Woody Wood that Section 3M is silent. It on its face only deals with the statutory tip credit. Therefore, in the Department's view, it is silent with respect to tips outside of the statutory tip credit. And that is why the Secretary has authority, retains authority to regulate here. Also. If it's silent, how do you distinguish Martinez? Excuse me, Your Honor? If it's silent, you're arguing, which is the first time I've heard it, that's the only reason I've stopped you because we're over time. How do you distinguish Martinez v. Welfare of a home mortgage? Where we held the interpretation of Section 8B of RSPA did not allow the agency to go beyond interpretation and establish its own rule. Seems to me you're stuck. You either got to go for it's in your apparent authority or you got to go with them, which you didn't want to go there before, or are you going to talk about silence? You got all kinds of cases against you. Well, Your Honor, we are going with Section 3M here. Section 3M is the basis. And that and 29B of the 1974 amendments. I don't need to ask a question if that's where you are. I would also emphasize that the FLSA simply is not an untrammeled free market statute, as the other side is suggesting here. It's comparable to Justice Holmes' famous quotation in the due process context that the due process clause doesn't enact Mr. Herbert Spencer's social statics. Or statistics. The FLSA, it regulates the relationship between the employer and the employees. It is the Fair Labor Standards Act. And tips are embraced within that under Section 3M. And the Secretary acted responsibly under her broad authority under 29B of the 1974 amendments. And if there are no further questions, I would urge the Court to reverse for the reasons set forth in our briefs today at argument. Thank you very much. Appreciate the arguments. All very good and very helpful. And the last item on the calendar, Charles Elmore v. Carolyn Colvin, has also submitted another brief. And that concludes the Court session. I will at this time adjourn all matters on this Court's calendar today and the earlier part of the week are submitted. Thank you. Have a good week. Thank you. Thank you.
judges: Pregerson, Smith, Owens